UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JEREMY E. SIGAL *et al.*, | Case No. 2:20-cv-00755-RFB-DJA |
| Plaintiff, | **ORDER** |
| v. | |
| JEREMY BEAN *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

Before the Court are four Motions to Dismiss: Motion to Dismiss by Defendants Carpenter, Carrao, Jackson, and Sweeten (ECF No. 17); Motion to Dismiss by Defendants Bean, Deal, Hubbard-Pickett, Nash, Portillo, Ternes, and Williams (ECF No. 18); Motion to Dismiss by Defendants Nedza and Remmers (ECF No. 32); and Motion to Dismiss by Defendant Nordgren (ECF No. 33).

For the reasons stated below, the Motion to Dismiss by Defendants Carpenter, Carrao, Jackson, and Sweeten (ECF No. 17) is GRANTED; the Motion to Dismiss by Defendants Bean, Deal, Hubbard-Pickett, Nash, Portillo, Ternes, and Williams (ECF No. 18) is GRANTED in part and DENIED in part; the Motion to Dismiss by Defendants Nedza and Remmers (ECF No. 32) is GRANTED; and the Motion to Dismiss by Defendant Nordgren (ECF No. 33) is GRANTED.

## II. PROCEDURAL HISTORY

On April 27, 2020, Defendants removed this case from the Eighth Judicial District Court,

Clark County, Nevada. ECF No. 1. On May 12, 2020, the Court granted a stipulation to dismiss Plaintiff Stephanie Sibley from the case. ECF No. 9.

On June 7, 2021, Defendants Carpenter, Carrao, Jackson, and Sweeten filed a Motion to Dismiss. ECF No. 17. Plaintiff responded on July 12, 2021. ECF No. 22. Defendants replied on July 29, 2021. ECF No. 31. On June 24, 2021, Defendants Bean, Deal, Hubbard-Pickett, Nash, Portillo, Ternes, and Williams filed a Motion to Dismiss. ECF No. 18. Plaintiff responded on July 12, 2021. ECF No. 21. On August 4, 2021, Defendants Nedza and Remmers filed a Motion to Dismiss. ECF No. 32. Plaintiff responded on September 3, 2021. ECF No. 36. Defendants replied on September 10, 2021. ECF No. 38. On August 16, 2021, Defendant Nordgren filed a Motion to Dismiss. ECF No. 33. Plaintiff responded on September 3, 2021. ECF No. 37. Defendant replied on September 10, 2021. ECF No. 39.

On September 27, 2021, Magistrate Judge Albregts granted a stipulation to stay discovery pending resolution of the dispositive motions. ECF No. 41.

The Court held a hearing on the Motions to Dismiss (ECF Nos. 17, 18, 32, 33) on February 10, 2022. This order follows.

**III.   ALLEGED FACTS**

Plaintiff Jeremy Sigal alleges the following facts:

In 2013, Plaintiff was sentenced to a 198-month prison term within the Nevada Department of Corrections ("NDOC"). The sentence arose out of four DUI cases. Plaintiff's sentence provided that he would become parole eligible after serving six years in custody. After serving five and a half years in custody at High Desert State Prison ("HDSP"), Plaintiff became eligible to serve the last six months of his incarceration in residential confinement ("ResCon").

On July 16, 2018, Plaintiff was transferred to ResCon, where he was to serve the remainder of his custodial sentence until his parole date of January 24, 2019. As part of Plaintiff's ResCon agreement, Plaintiff was required to comply with various rules, including, *inter alia*, that he would be home during non-curfew hours; charge his ankle monitor every day; participate in regular

Breath Alcohol Real Time ("BART") testing; and refrain from operating motorized vehicles.

From July 16, 2018, until his re-arrest on October 20, 2018, Plaintiff experienced escalating harassment by DPS staff, including "numerous, excessive, and late hours of the night calls, texts, visits, bracelet checks, and otherwise harassing calls [and] visits to Plaintiff's residence."

At the start of Plaintiff's ResCon term, Plaintiff met with his assigned DPS officer, Defendant Remmers, to go over his proposed work schedule. Plaintiff is a businessman and management consultant. Defendant Remmers approved Plaintiff for a work schedule of Monday through Friday from 10 a.m. to 10 p.m. After his first week in ResCon, Plaintiff contacted Defendant Remmers to request an update to his work schedule. Plaintiff sought permission to work on weekends to accommodate his growing business. Remmers rejected Plaintiff's request. Every subsequent request that Plaintiff made to obtain a work schedule update was denied by Remmers.

On August 2, 2018, Remmers told Plaintiff that he could "call the emergency line" to request permission to work outside of his approved work schedule. Remmers told Plaintiff it "did not mean [he could] go out for lunch or dinner." This condition was contrary to ResCon's rules, which allow for inmates to work overtime and attend job interviews outside of curfew, and which do not include a "no restaurant rule." On August 4, 2018, Plaintiff attended a Las Vegas Lights soccer game as part of a business meeting, after having contacted the emergency line as directed by Remmers. Shortly thereafter, he received a text message from Defendant Woodward, another DPS officer, accusing him of being outside of the residence without permission.

Defendant Remmers wrongfully accused Plaintiff of violating the terms of his ResCon agreement. For example, on August 6, 2018, Remmers accused Plaintiff of missing 35 BART tests. It was later revealed that this was due to Remmers' miscalibration of testing times, which caused the BART device to ping while Plaintiff was asleep. Remmers later submitted violation reports claiming that Plaintiff was told three times that he was not allowed to attend business dinners at restaurants. However, Remmers' direct supervisor, Defendant Sweeten, acknowledged that NDOC had no rule that ResCon participants are forbidden from attending restaurants. Remmers knew that attending meetings at restaurants was critical to Plaintiff's work in sales, marketing, and

management consulting. On September 10, 2018, Plaintiff met with Remmers to request special permission to operate a motorized electric sidewalk scooter due to his permanent legal handicapped status. Despite Plaintiff's compliance with scooter rules, Remmers wrote Plaintiff up for a "riding scooter violation." On October 20, 2018, Plaintiff had to attend an emergency meeting with a client at St. Rose Emergency Room. He contacted the emergency line regarding the meeting. Later that night, DPS officers Defendants Woodward and Nordgren entered Plaintiff's residence and placed him under arrest for violating curfew. At that point, Plaintiff was returned to NDOC custody.

On October 22, 2018, Defendant Remmers submitted a violation report, recommending that Plaintiff remain in the custody of NDOC for his alleged "blatant disregard of program rules." The report contained numerous falsehoods and reckless inaccuracies, including that: Plaintiff was non-compliant for failing to participate in 35 BART tests; Plaintiff was repeatedly told that he was not permitted to attend business lunches or dinners but attended such outings anyway; Plaintiff rode a motorized scooter in violation of his ResCon agreement; Plaintiff failed to charge his ankle bracelet on numerous occasions; Plaintiff did not have permission to perform work on weekends, and attending a meeting at the St. Rose Emergency Room was not a legitimate reason to be outside of curfew; and Plaintiff needed prior approval to be outside of curfew, which he did not have.

Following Plaintiff's arrest, Defendants Remmers and Jackson arrived at the Clark County Detention Center to conduct a hearing with Plaintiff as to the validity of Remmers' claims. Plaintiff was not permitted to present evidence, witnesses, or to retain counsel at that hearing. On November 8, 2019, Plaintiff was served a Notice of Charges for a prison offense in custody ("OIC"), arising out of the termination of his residential confinement. Plaintiff entered a not guilty plea. On November 27, 2018, Plaintiff had a meeting with Defendants Ternes and Nash, in which they informed Plaintiff that they intended to request the Parole Board rescind his parole grant and prison release date of January 24, 2019. On November 29, 2018, Plaintiff had a hearing at HDSP with Defendant Carrao. Defendant Carrao did nothing, which resulted in revocation of Plaintiff's prison release date of January 24, 2019. On December 4, 2018, Defendant Portillo conducted Plaintiff's

OIC hearing. Defendant Portillo forbid any DPS testimony and refused to consider any evidence.

On February 7, 2019, Plaintiff had a hearing before the Parole Board. The Board stated that they had "reviewed all the evidence and did not want to address the residential confinement termination" and found that Plaintiff's previously ordered parole grant was appropriate. The Parole Board did not revoke, modify, or reinstate the parole grant, but instead issued a finding of "no action," released Plaintiff back into the community, and encouraged Plaintiff to "keep up the good work."

Plaintiff alleges that Defendants violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution, as well as his constitutional rights "as a disabled person."

### IV.   LEGAL STANDARD

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The court may also dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive

dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

V.   PARTIES' ARGUMENTS

    A.   Motion to Dismiss by Defendants Carpenter, Carrao, Jackson, and Sweeten (ECF No. 17)

Defendants Carpenter, Carrao, Jackson, and Sweeten argue that Plaintiff's Fourth Amendment claim should be dismissed because Plaintiff has not alleged a cognizable violation of a Fourth Amendment right. Defendants argue that parolees and other offenders under state supervision have limited Fourth Amendment rights, and are subject to various state-imposed restrictions on their privacy, including mandatory drug tests, meetings with parole officers, and travel restrictions. Because Plaintiff was in state custody and has not alleged that any of the monitoring that he was subjected to was inconsistent with the terms of his supervision, Defendants contend that Plaintiff's Fourth Amendment claim should be dismissed. Defendants also argue that Plaintiff fails to state a colorable Fourteenth Amendment claim. Defendants argue there is no constitutional right to parole, and thus Plaintiff cannot claim that Defendants violated his Fourteenth Amendment rights by fabricating evidence in order to have his parole date revoked. Defendants argue that to the extent Plaintiff alleges his constitutional rights "as a disabled person" were disregarded, this claim should also be dismissed, because Plaintiff has not sufficiently alleged the type of disability he suffers from, the nature of the constitutional right infringed, or how Defendants violated any such right.

Further, Defendants contend that Plaintiff has failed to allege that Carpenter, Carrao, Jackson, or Sweeten were personally involved in any constitutional violation. Defendants note that Carpenter is sued in her individual and official capacity as the Chief of DPS, but the Complaint contains no allegations regarding Defendant Carpenter. Likewise, while Defendant Carrao is alleged to have been present at a November 2018 HDSP meeting with Plaintiff, there are no additional allegations that would establish personal participation by Defendant Carrao in the

violation of any of Plaintiff's rights. Similarly, Defendant Sweeten is a DPS sergeant who is alleged to have met with Plaintiff to discuss compliance issues while in ResCon. Defendants argue Plaintiff has not alleged how Defendant Sweeten personally participated in a constitutional deprivation. Finally, Defendant Jackson is alleged to have presided over an October 2018 HDSP meeting following Plaintiff's arrest for violating the ResCon terms. Defendants argue that offenders have no enforceable due process rights or liberty interests with respect to placement in parole or residential confinement, and thus Plaintiff has not alleged sufficient facts to demonstrate Defendant Jackson's personal participation in a constitutional violation.

Finally, Defendants argue that they are entitled to qualified immunity, because as an offender in Nevada's residential confinement program, Plaintiff did not have any clearly established constitutional rights that would prohibit searches or monitoring by DPS staff; nor did he have rights entitling him to additional process at hearings related to discipline or parole revocation.

Plaintiff responds that he has alleged a cognizable Fourth Amendment claim, because the Fourth Amendment still requires that searches of offenders' homes be reasonable. Plaintiff contends that the calls, texts, and visits that DPS conducted fell well outside the scope of a reasonable probation, parole, or house arrest condition. Plaintiff also argues that he has alleged a cognizable Fourteenth Amendment claim. Plaintiff contends that he is not alleging a constitutional right to parole, but instead, he is alleging that when an agency offers parole, it must administer parole proceedings in accordance with due process principles. Plaintiff argues that he abided by all of the conditions of his ResCon agreement, but was nevertheless unjustly arrested and sent back to prison in violation of due process. Plaintiff further argues that "notice pleading has been satisfied" with respect to his allegations regarding his disability.

Finally, Plaintiff argues that he has sufficiently alleged personal involvement of the DPS defendants, and that Defendants are not entitled to qualified immunity, because the constitutional rights asserted are clearly established. Plaintiff appears to concede that Carpenter was not personally involved in any of the alleged constitutional violations, but he argues that the Complaint

sufficiently pleads the personal involvement of Jackson, Sweeten, and Carrao.

> B. <u>Motion to Dismiss by Defendants Bean, Deal, Hubbard-Pickett, Nash, Portillo, Ternes, and Williams (ECF No. 18)</u>

Defendants Bean, Deal, Hubbard-Pickett, and Williams argue they should be dismissed from suit because they are not alleged to have participated in any of the claimed constitutional violations. Defendants contend they are named solely because they are supervisory officials at HDSP. Because *respondeat superior* liability does not exist for the purposes of a § 1983 suit, Defendants argue they should be dismissed.

Defendants Bean, Deal, Hubbard-Pickett, Nash, Portillo, Ternes, and Williams (collectively, the "NDOC defendants") further argue that they should be dismissed from suit because Plaintiff fails to allege a cognizable Fourth or Fourteenth Amendment violation against them. First, the NDOC defendants argue that they are not alleged to have engaged in any search of Plaintiff's property or to have otherwise participated in the monitoring of Plaintiff while he was in ResCon, and thus they cannot be liable for any alleged Fourth Amendment violation.

With respect to the Fourteenth Amendment claim, Defendants Ternes and Nash argue they cannot be liable for any alleged due process violation because they were not involved in any disciplinary process for which Plaintiff had cognizable due process rights. Ternes and Nash are only alleged to have held an informal meeting with Plaintiff to discuss the possible revocation of his parole. Plaintiff does not allege that this was a disciplinary hearing of any kind, and thus Ternes and Nash should be dismissed with respect to the Fourteenth Amendment claim.

Defendant Portillo also argues that a Fourteenth Amendment claim cannot lie against him, because Portillo provided Plaintiff with all the process he was due at the OIC disciplinary hearing, pursuant to the three-part test of <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-69 (1974). Portillo argues that the NDOC disciplinary hearing documentation shows that Plaintiff received notice of the charges against him, that a disciplinary hearing was held, and that the charging document sets forth clear evidence of Plaintiff's parole violations (e.g. he was attending parties and violating curfew,

missing BART tests, etc.). To the extent Plaintiff was denied the right to present witnesses at his hearing, Portillo argues this deprivation does not amount to a due process violation, because the denial was reasonably related to correctional goals. Specifically, the witnesses Plaintiff sought to call were not called because they were not NDOC employees, and their testimony was thus irrelevant to whether Plaintiff violated an NDOC policy; further, NDOC lacks subpoena power to compel a non-NDOC official to appear at a disciplinary hearing, and waiting for Plaintiff's non-NDOC witnesses to appear would have interfered with NDOC's interest in swift resolution of Plaintiff's hearing.

The NDOC defendants also allege that they are entitled to qualified immunity, because the rights alleged by Plaintiff are not clearly established. They contend that there is no authority which holds that prison officials cannot speak to an inmate about a parole violation and its potential consequences, nor is there any allegation that NDOC officials actually attempted to revoke Plaintiff's parole. Instead, Plaintiff claims it was the DPS Defendants who arrested him and the NDOC defendants became involved only after Plaintiff's return to prison.

Plaintiff contends that he has sufficiently alleged personal participation against all of the NDOC defendants. Plaintiff contends that Bean, Deal, Hubbard-Pickett, and Williams are NDOC supervisors who violated Plaintiff's rights by "failing to act or otherwise." However, Plaintiff's opposition brief appears to concede that there is no Fourth Amendment claim against the NDOC defendants. Plaintiff's brief also does not address the Fourteenth Amendment claim or the issue of qualified immunity with respect to the NDOC defendants, but at oral argument, Plaintiff alleged that he had stated a cognizable Fourteenth Amendment claim because he was deprived of process at the OIC hearing, and because Defendants made a "concerted effort" to revoke his ResCon and parole date.

C. <u>Motion to Dismiss by Defendants Nedza and Remmers (ECF No. 32)</u>

Defendants Nedza and Remmers raise substantially the same arguments in favor of dismissing Plaintiff's Fourth Amendment, Fourteenth Amendment, and disability claims as were raised by Defendants Carpenter, Carrao, Jackson, and Sweeten. They argue Plaintiff has failed to

9

allege a cognizable Fourth Amendment claim because as a parolee, Plaintiff was subject to diminished privacy interests. They also argue Plaintiff has failed to allege a cognizable Fourteenth Amendment claim because there is no right or liberty interest in placement in the ResCon program. Finally, they contend that Plaintiff does not allege any particular disability or constitutional right violated in connection with his disability.

Like the other DPS defendants, Defendants Nedza and Remmers also argue that Plaintiff has failed to allege that they were personally involved in any constitutional violation. Defendant Remmers argues that Plaintiff's bases for his constitutional claims are that: Remmers rejected Plaintiff's requests to alter his work schedule; prohibited him from going to restaurants for work meetings; and submitted a report falsely accusing Plaintiff of violating his release conditions. Remmers argues Plaintiff has no constitutional right to a preferred work schedule or to go to restaurants for work-related meetings, and that making false statements does not establish a constitutional violation. Defendant Nedza argues that Plaintiff's sole basis for alleging that Nedza violated his constitutional rights is that Nedzsa was a DPS sergeant who signed the violation report along with Defendant Remmers. Defendant Nedza argues that Plaintiff's own evidence shows that Nedza did not sign the violation report, as the report was not approved by Nedza, but was instead signed as "approved" by a "csahlberg." Remmers and Nedza also argue they are entitled to qualified immunity.

Plaintiff responds that he has alleged viable Fourth and Fourteenth Amendment claims against Remmers and Nedza. With respect to the Fourth Amendment claim, Plaintiff argues that Defendants engaged in conduct outside the scope of any reasonable parole or probation conditions. Defendants' harassing calls, texts, and visits to Plaintiff's residence were made with the intention of "setting Plaintiff up" to violate him. Plaintiff argues he has also stated a cognizable Fourteenth Amendment claim against Remmers and Nedza, because his Complaint alleges that he followed all of the ResCon rules, but was falsely accused of violating the terms of his ResCon by DPS employees – most notably Remmers and Nedza. In essence, Plaintiff alleges Remmers and Nedza fabricated evidence of Plaintiff's violations to get him kicked out of ResCon. Plaintiff argues these

allegations establish Remmers' and Nedza's personal participation in depriving Plaintiff of his due process rights.

Plaintiff raises the same arguments in support of his disability claim as summarized above. He also raises the same arguments with respect to qualified immunity as raised above.

### D. Motion to Dismiss by Defendant Nordgren (ECF No. 33)

Defendant Nordgren raises substantially the same arguments as the other defendants in support of dismissal of the Complaint. Nordgren argues that (1) Plaintiff has not alleged a cognizable Fourth or Fourteenth Amendment claim; (2) Plaintiff has alleged no cognizable constitutional claim arising from disability discrimination; (3) Plaintiff has alleged no personal participation by Nordgren in any constitutional violation; and (4) Nordgren is entitled to qualified immunity.

Plaintiff argues Nordgren violated his Fourth and Fourteenth Amendment rights when he "ratified the falsified and misleading report made by Defendant Remmers" by arresting Plaintiff. Plaintiff raises the same arguments in support of his disability claim as summarized above. He also raises the same arguments with respect to qualified immunity as raised above.

## VI. DISCUSSION

### a. Fourth Amendment claim

The Court finds that dismissal is appropriate as to the Fourth Amendment claim against all defendants. Plaintiff's Fourth Amendment claim appears to be that he was subjected to unreasonable searches and seizures when the DPS defendants subjected him to baseless texts, visits, check-ins, and bracelet checks.

First, dismissal of this claim is appropriate as to all of the NDOC defendants because Plaintiff does not allege anywhere in the complaint that the NDOC defendants unreasonably searched or seized Plaintiff. While Plaintiff alleges that he was falsely arrested before being terminated from ResCon, this allegation cannot support an unlawful seizure claim against NDOC, because Plaintiff was allegedly arrested by DPS officers – not by any NDOC officers.

Dismissal is also appropriate as to all of the DPS defendants. The Ninth Circuit has "repeatedly recognized that status as a parolee significantly diminishers one's privacy interests as compared to the average citizen." United States v. Johnson, 875 F.3d 1265, 1273 (9th Cir. 2017) (citing Samson v. California, 547 U.S. 843, 850 (2006)). Accordingly, parolees are entitled to a lesser degree of privacy protection than ordinary citizens, and are subject to "state-imposed intrusions on their privacy, including mandatory drug tests, meetings with parole officers, and travel restrictions." Id. at 1274. While "restrictions on a parolee's liberty are not unqualified," the facts alleged here do not demonstrate that Plaintiff was subjected to excessive, arbitrary, or malicious monitoring. Id. (quoting Samson, 547 U.S. at 850 n.2). Plaintiff signed a conditional release agreement which stated that he and his property could be searched at any time with or without warrant. See Samson, 547 U.S. at 852 ("Acceptance of a clear and unambiguous search condition significantly diminished [parolee's] reasonable expectation of privacy."). Further, Plaintiff does not even clearly allege that he was subjected to an unreasonable search or seizure. Rather, his primary allegations are that he was not permitted to go to restaurants, to take work appointments outside of his preapproved schedule, or to use a motorized scooter, and that Plaintiff's alleged violations of these policies prompted DPS officers to confront him by texts, calls, and in-person visits. Plaintiff's Fourth Amendment claim is therefore dismissed in its entirety.

The Court further denies leave to amend. "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). When considering whether to grant a motion seeking leave to amend a complaint, the Court may consider whether there is (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility in amendment; and (5) whether the Plaintiff has previously amended the complaint. Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990). Leave to amend should be denied if the proposed amendment is futile. Carrico v. City & Cty. of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011).

Plaintiff requests leave to amend to more adequately plead personal participation by the

NDOC Defendants in a Fourth Amendment violation, and to supplement the Fourth Amendment claim as to the DPS defendants. Plaintiff submitted a proposed Amended Complaint. The Court finds that the proposed Amended Complaint does not include any additional allegations of personal participation in any unreasonable search or seizure by either the NDOC or DPS defendants; nor does the proposed Amended Complaint otherwise address the above noted deficiencies. Accordingly, the Court denies leave to amend as futile.

      b. Fourteenth Amendment Claim

Next, the Court finds that dismissal of the Fourteenth Amendment claim is appropriate as to all defendants except for Defendant Portillo.

The Fourteenth Amendment of the United States Constitution prohibits states from depriving "any person of life, liberty, or property, without due process of law," and protects the individual from "arbitrary action of government." Wolff, 418 U.S. at 558. Courts evaluating a Fourteenth Amendment due process claim must "first ask whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally deficient." Swarthout v. Cooke, 562 U.S. 216, 219 (2011).

Plaintiff appears to allege that his Fourteenth Amendment rights were violated when 1) the DPS Defendants – most notably Defendant Remmers – fabricated that Plaintiff had violated the terms of ResCon, in order to send him back to prison and to have his parole date revoked; and 2) Defendants provided inadequate process at Plaintiff's OIC hearing.

As a preliminary matter, the Ninth Circuit has recognized that Nevada offenders have no constitutional liberty interest in residential confinement, parole, or parole eligibility. Moor v. Palmer, 603 F.3d 658, 661-62 (9th Cir. 2010); see also Severance v. Armstrong, 620 P.2d 369, 370 (holding that an inmate cannot challenge the alleged arbitrary or capricious denial of a parole application because Nevada statute "does not confer a legitimate expectation of parole release and therefore does not create a constitutionally cognizable liberty interest sufficient to invoke due process"). Thus, to the extent Plaintiff argues his due process rights were violated by the erroneous

termination of his ResCon and postponement of his initial parole date, the Court rejects this claim, as Plaintiff has no protected right to a term of residential confinement or parole eligibility.

Plaintiff appears to argue that he not only had a right to residential confinement and parole, but also that he had a right to fair process in the revocation of his ResCon and parole date. Plaintiff argues that when an agency offers parole or residential confinement, it must administer proceedings to revoke or terminate the parole or residential confinement in accordance with the Fourteenth Amendment. Plaintiff alleges that the DPS defendants (Defendant Remmers in particular) violated Plaintiff's Fourteenth Amendment due process rights by fabricating charges against him to revoke his ResCon and parole eligibility.

The filing of unfounded charges against an inmate is not a *per se* constitutional violation for the purposes of a § 1983 claim. Freeman v. Rideout, 808 F.2d 949, 950 (2nd Cir. 1986); see also Smith v. Mensinger, 293 F.3d 641, 654 (3rd Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) ("[Plaintiff's] claims based on the falsity of the charges and the impropriety of [Defendant's] involvement in the grievance procedure, standing alone, do not state constitutional claims.").

While prisoners "are entitled to be free from arbitrary actions of prison officials," the protections against arbitrary action are the procedures provided for in a disciplinary hearing. Hanrahan v. Lane, 747 F.2d 1137, 1139-40 (7th Cir. 1984) (stating that due process protections against a prison official's false statements "are the procedural due process requirements outlined in Wolff v. McDonnell"). Because disciplinary procedures typically provide a prisoner with the opportunity to defend against improper or erroneous charges, allegations that a parole or corrections officer fabricated violations or failed to abide by state law or regulation will not – in and of themselves – give rise to a due process claim. Hanrahan, 747 F.2d at 1140; see also Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that a mere error of state law is not a denial of due 'process." (quotations and citations omitted)); Strong v. Ford, No.

95-16404, 1997 U.S. App. LEXIS 5176, at *4 (9th Cir. 1997) ("The alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federal right protected by 42 U.S.C. § 1983 when it does not result in the imposition of 'atypical hardship on the inmate in relation to the ordinary incidents of prison life.'" (quoting Sandin v. Conner, 515 U.S. 472, 474 (1995))). As such, the Court rejects Plaintiff's contention that he has a standalone due process claim arising from any DPS defendant's alleged fabrication of charges or evidence against him.[1] Any Fourteenth Amendment claim that Plaintiff has is best styled as a procedural due process claim, arising from insufficient process afforded to Plaintiff in the *challenging* of those alleged false charges. Indeed, this appears to be Plaintiff's second articulated basis for a Fourteenth Amendment claim.

Here, it is undisputed that Plaintiff was afforded two hearings: (1) a December 4, 2018 "Offense in Custody" hearing before Defendant Portillo, and (2) a February 7, 2019 hearing before the Parole Board, at which Plaintiff alleges the Parole Board "refused the alleged violations that had originated with Defendant[] Remmer[s] and her coh[o]rts," and "indicat[ed] that Plaintiff Sigal's previously ordered parole grant was appropriate." Plaintiff does not argue that he was denied sufficient process at the Parole Board hearing; he only argues that the OIC hearing provided him with insufficient process to challenge the alleged offenses – lodged by Defendant Remmers and Nedza – that gave rise to Plaintiff's ResCon revocation.

The Supreme Court has held that incarcerated people in disciplinary proceedings are entitled to the following process: (1) advanced written notice of charges, (2) a written statement by the fact finder of the evidence relied upon, and (3) a qualified right to call witnesses and present evidence, "when permitting [the inmate] to do so will not be unduly hazardous to institutional

---

[1] The Court further notes that under certain circumstances, inmates against whom false charges are allegedly lodged may have a cognizable § 1983 claim for a First Amendment violation. Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012) (holding that allegations of placement in segregation on false disciplinary charge can give rise to a cognizable First Amendment claim). Here, Plaintiff does not allege such a claim, nor does he allege any facts that would give rise to such a claim.

safety or correctional goals." Wolff v. McDonnell, 418 U.S. 539, 563-69 (1974). The Court finds that under the Wolff test, Plaintiff has alleged a colorable due process violation insofar as he alleges he was subjected to discipline/punishment (e.g. in having his ResCon terminated and his parole date temporarily revoked or delayed) without adequate process. Plaintiff acknowledges that he was provided a written statement of his charges, including the evidence relied upon in terminating him (e.g. his missed BART tests, scooter violation, unapproved outings, etc.). However, he alleges he did not have a right to call witnesses, and that Defendant Portillo flatly denied him the opportunity to present any evidence to refute the alleged ResCon violations. Accepting these well-pleaded allegations as true and construing them in the light most favorable to Plaintiff, the Court finds the Plaintiff has sufficiently alleged that the third Wolff factor was not satisfied, giving rise to a cognizable procedural due process claim against Portillo.

The Court dismisses the Fourteenth Amendment due process claim as to all other defendants. For the reasons stated above, there is no standalone due process claim – untethered from the process afforded to Plaintiff at the OIC hearing – against any of the other DPS or NDOC defendants. Portillo is the only party that is alleged to have deprived Plaintiff of adequate process in connection with a disciplinary hearing. Plaintiff does not allege that any of the other named defendants played a role in the disciplinary hearing process.

The Court further finds that Defendant Portillo is not entitled to qualified immunity on the procedural due process claim at this time. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). In evaluating a claim of qualified immunity, the Court engages in a two-step inquiry:

> First, [it] must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

Id. at 232 (citations omitted).

As discussed above, taking the facts alleged in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged a violation of his procedural due process rights.

With respect to the second prong of the qualified immunity analysis, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Tarabochi v. Adkins, 766 F.3d 1115, 1125 (9th Cir. 2014) (internal quotation marks omitted). "This requires two separate determinations: (1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." Green v. City & Cty. of San Francisco, 751 F.3d 1039, 1052 (9th Cir. 2014). While a case directly on point is not required in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al–Kidd, 563 U.S. 731, 741 (2011). Further, the right must be defined at "the appropriate level of generality . . . [the court] must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." Cunningham v. Gates, 229 F.3d 1271, 1288 (9th Cir. 2000).

The Court finds that based on Plaintiff's allegations that Defendant Portillo "refused to consider any evidence" and forbade "any DPS testimony or witness" at Plaintiff's OIC hearing, Defendant Portillo is not entitled to qualified immunity at this time. It is clearly established that inmates at a disciplinary hearing have "a qualified right to call witnesses and present evidence," so long as doing so would not be "unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566. Defendant's argument for qualified immunity is based on the premise that the Court credit his assertion that Plaintiff's requested witnesses and evidence were "not relevant to whether [Plaintiff] violated an NDOC policy," and that "waiting to contact and then transport [the witness] would interfere with NDOC's interest in conducting swift disciplinary hearings." The Court is mindful that no discovery has yet been conducted such that Plaintiff could refute Defendants' contention that Defendant Portillo's decision was "reasonably related to correctional goals." At best, there are genuine issues of disputed fact between the Plaintiff and Portillo as to what occurred and the basis for Portillo's decision. As such, the Court concludes that Defendant

Portillo is not entitled to qualified immunity at this time. See Santos v. Gates, 287 F.3d 846, 855 n.12 (9th Cir. 2002) (stating that a decision on qualified immunity is "premature" where "the jury's resolution of disputed facts and the inferences it draws therefrom" may bear on legality of an officer's conduct).

Finally, the Court also denies Plaintiff's request for leave to amend the complaint to supplement his Fourteenth Amendment argument as to all defendants other than Defendant Portillo. The Court, having reviewed the proposed Amended Complaint, finds that Plaintiff does not allege any additional facts to suggest that anyone other than Defendant Portillo presided over the OIC disciplinary hearing for the purposes of a cognizable Fourteenth Amendment claim. The Court thus finds that amendment would be futile.

### c. Disability Claim

Plaintiff broadly alleges that "as a disabled person, he had rights under the constitution that Defendants violated and recklessly disregarded." Plaintiff does not identify any particular disability, and it is unclear what constitutional right Plaintiff is invoking. Plaintiff has failed to allege any non-conclusory facts that would be "plausibly suggestive of a claim entitling [him] to relief," and the Court thus dismisses any constitutional claim related to an alleged disability of Plaintiff's. Moss, 572 F.3d at 969.

The Court also denies Plaintiff's request for leave to amend the disability claim as futile. Plaintiff's proposed Amended Complaint adds only one factual allegation to his proposed disability claim – that Plaintiff has a "rod in [his] leg." While this allegation adds to Plaintiff's claim that he is disabled, the Amended Complaint still fails to identify which constitutional right Plaintiff invokes.

### VII.   CONCLUSION

**IT IS ORDERED** that the Motion to Dismiss by Defendants Carpenter, Carrao, Jackson, and Sweeten (ECF No. 17) is GRANTED.

**IT IS FURTHER ORDERED** that the Motion to Dismiss by Defendants Bean, Deal, Hubbard-Pickett, Nash, Portillo, Ternes, and Williams (ECF No. 18) is GRANTED in part and DENIED in part. The Motion is DENIED as to Defendant Portillo and GRANTED as to all other defendants.

**IT IS FURTHER ORDERED** that the Motion to Dismiss by Defendants Nedza and Remmers (ECF No. 32) is GRANTED.

**IT IS FURTHER ORDERED** that the Motion to Dismiss by Defendant Nordgren (ECF No. 33) is GRANTED.

**DATED: February 21, 2022**

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**